ORIGINAL

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FILED IN CLERK'S OFFICE
U.S.D.C. Atlanta

MAY 2 2 2009

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

BRENT AVERY and DAVID
WATSON, on behalf of themselves
and all others similarly situated,

      Plaintiffs,

      v.

DELTA AIR LINES, INC., AIRTRAN
HOLDINGS, INC., and AIRTRAN
AIRWAYS, INC.,

      Defendants.

No. **1:09-CV-1391**

CLASS ACTION COMPLAINT

JURY TRIAL DEMANDED

**TCB**

## CLASS ACTION COMPLAINT

*Introduction*

    1.    Delta and AirTran are each other's principal competitors. Atlanta Hartsfield-Jackson Airport serves as the hub for both airlines. Both airlines have a number of overlapping routes for which they have competed intensely for the business of consumers. Consumers have benefited from this competition in the form of lower prices. For example, some (but not all) airlines charge consumers for the first piece of luggage checked ("first bag fee") – a pricing practice that has been lucrative for airlines and intensely unpopular with consumers. Competition

between Delta and AirTran prevented either airline from charging a first bag fee for fear of losing sales to the other. But this changed in the fall of 2008, after Delta accepted AirTran's invitation to collude on the imposition of a first bag fee. As a consequence, during a time in which demand for airline tickets has decreased due to an economic slowdown, the competing airlines have increased prices to consumers by agreeing to business decisions that, if carried out unilaterally, would have been counter to each Defendant's business interests.

2.      This Complaint seeks damages and injunctive relief on behalf of Plaintiffs and a class of airline passengers further defined below who directly paid a first bag fee to the Defendants in violation of the Sherman Act.

### The Parties

3.      Plaintiff Brent Avery is a resident of Woodstock, Georgia. He was a passenger on Delta flights to and from Atlanta in February 2009 and directly paid Delta a first bag fee for luggage checked on this flight.

4.      Plaintiff David Watson is a resident of Atlanta, Georgia. He was a passenger on Delta and AirTran flights in March and April 2009 to Atlanta and directly paid a first bag fee to both Delta and AirTran for luggage checked on these flights.

5.      Defendant Delta Air Lines, Inc. ("Delta") is a Delaware corporation

2

with its principal place of business in Atlanta, Georgia.    Prior to its 2008 acquisition of Northwest Airlines, Delta was the third largest domestic airline in the United States with its principal hub located at Hartsfield-Jackson Airport in Atlanta, Georgia.  Delta has annual revenues of approximately $20 billion.

6.    Defendant AirTran Airways, Inc. is a Delaware corporation with its principal place of business in Orlando, Florida.    AirTran Airways, Inc. is a subsidiary of AirTran Holdings Inc.  It operates over 750 daily flights throughout the Eastern United States and Midwest, including over 270 daily departures from Atlanta, which is the airline's principal hub.

7.    Defendant AirTran Holdings, Inc. is a Nevada corporation with its principal place of business in Orlando, Florida, and is the parent of AirTran Airways, Inc.  AirTran Holdings Inc. and AirTran Airways, Inc. are referred to collectively herein as ("AirTran").  AirTran has annual revenues of approximately $2 billion.

## Jurisdiction, Venue, and Interstate Commerce

8.    The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1337(a) (commerce and antitrust regulation), because certain claims in this action arise under sections 1 and 2 of the Sherman Act (15 U.S.C. §§ 1 and 2) and sections 4 and 16 of the Clayton Act (15 U.S.C. §§

3

15(a)).

9.      Venue in this District is proper pursuant to 28 U.S.C. § 1391; and 15 U.S.C. §§ 15, 22, and 26, in that Defendants inhabit, transact business, reside, are found, or have an agent in this district, and a significant portion of the affected interstate trade and commerce described below has been carried out in this District.

10.     Defendants' anticompetitive activities were within the flow of and had a proximate, direct, substantial, and reasonably foreseeable effect on interstate commerce. At all material times, Defendants engaged in business across state lines and charged unlawful first bag fees to Plaintiffs and members of the Class across state lines.

## Facts

*History of Collusion*

11.     The airline industry has a history of price collusion. Collusive activity in the airline industry has included invitations to collude and price fixing through public signaling of future pricing decisions with the understanding that competitors would follow suit. *See In re Travel Agency Commission Antitrust Litigation*, 898 F. Supp. 685 (D. Minn. 1995) (denying summary judgment in an antitrust signaling case involving Delta and other airlines); *United States v. Airline Tariff Publishing Co.*, No. 92-2854, 1994 WL 454730 (D.D.C. Aug. 10, 1994) (approving consent

decree preventing unlawful price signaling by Delta and other airlines). As set forth below, AirTran's invitation to Delta to collude on the imposition of a first bag fee, and Delta's acceptance, constitutes a *per se* violation of the Sherman Act.

*Competition Between AirTran and Delta*

12.     AirTran positions itself as a discount airline – i.e., an airline with low fees compared to its competition. Other discount airlines include Southwest and JetBlue. AirTran is well positioned to offer low fees because it maintains a low cost structure. AirTran recently described itself as maintaining "industry leading non-fuel costs."

13.     AirTran's positioning as a discount airline is popular with consumers. For example, in 2008, AirTran experienced a 9.6 percent increase in traffic on its flights, a year in which other major airlines reported decreases in traffic due to a challenging economic climate.

14.     Delta has proven to be a formidable competitor to AirTran. Atlanta Hartsfield-Jackson Airport serves as the principal hub for both AirTran and Delta, and the two airlines account for approximately 92 percent of airline traffic at the airport. Delta has consistently matched AirTran's low price offerings to and from Atlanta. The two airlines have competed intensely over market share in what has been described as "one of the fiercest rivalries in the U.S. airline industry."

15.     Vigorous competition between AirTran and Delta yielded lower prices for consumers. In 2008, for example, AirTran began servicing the Atlanta - Port Columbus, Ohio route. Delta, which also services this route, responded by cutting its fares on this route by more than 50 percent and increasing flight capacity by 36 percent.

16.     Competition between AirTran and Delta also restricted the airlines from imposing certain baggage fees on consumers. For example, non-discount airlines have imposed a $15 baggage fee on consumers for the first piece of luggage checked ("first bag fee"). Southwest and Jet Blue – AirTran's discount airline peers – do not charge a first bag fee.

17.     Throughout much of 2008, neither AirTran nor Delta charged a first bag fee. Intense competition for consumers prevented either airline from imposing such a fee. Both Delta and AirTran analyzed whether to charge a first bag fee but chose not to, upon information and belief, for fear of losing sales.

18.     For example, in April 2008, Delta announced that it would acquire Northwest Airlines. At the time of the announcement, Northwest charged a $15 first bag fee. On a July 16, 2008 earnings call, in light of Delta's acquisition of Northwest, Delta was asked whether it would begin to charge consumers a first bag fee to conform its practices to Northwest's. Considering that AirTran did not

6

impose a similar fee on consumers, Delta stated that it had "no plans" to charge consumers a first bag fee:

> Q: In terms of the first bag fee, I think Northwest has it and you don't, where is that heading?
>
> A: We will study it, we will continue to study it but we have no plans to implement it at this point.

Edward Bastian, Delta President & CFO, Q2 Investor Conference Call (June 30, 2008).

*Defendants' Anticompetitive Scheme*

19.     Unilaterally imposing a first bag fee on consumers would have been against AirTran's and Delta's economic self interest. The unilateral imposition of such a fee by either airline would have resulted in lost sales to its competitor. But both AirTran and Delta would benefit in the form of tens of millions of dollars a year in increased revenue if they acted in concert: if they both agreed to charge a first bag fee neither would risk losing sales to the other and both would profit.

20.     An agreement between the two airlines was reached in the fall of 2008, after AirTran offered, and Delta accepted, an invitation to collude. As a publicly traded corporation, AirTran holds a conference call with securities analysts on a quarterly basis. Any person may listen to the call live or may listen to an archived version via AirTran's web site. Transcripts of the calls are also

7

publicly available. A corporation's quarterly analyst calls are typically monitored by its competitors. Upon information and belief, AirTran executives were aware that Delta representatives monitor their calls with analysts. AirTran thus used an October 23, 2008 call with analysts as a vehicle to communicate to Delta an invitation to collude on the imposition of a first bag fee. On the call, AirTran's CEO and President, Robert Fornaro, stated that AirTran wanted to implement a first bag fee, that AirTran had invested in the technological capability to quickly implement the fee, and that AirTran would implement the fee if Delta acted first. Specifically, Mr. Fornaro stated:

> Let me tell you what we've done on the first bag fee. We have the programming in place to initiate a first bag fee. And at this point, we have elected not to do it, primarily because our largest competitor in Atlanta [i.e., Delta], where we have 60% of our flights, hasn't done it. And I think, we don't think we want to be in a position to be out there alone with a competitor who --we compete on, has two-thirds of our nonstop flights, and probably 80 to 90% of our revenue -- is not doing the same thing. So I'm not saying we won't do it. But at this point, I think we prefer to be a follower in a situation rather than a leader right now.

Robert Fornaro, AirTran President & CEO, Q3 Investor Conference Call (Oct. 23, 2008). He added that, if Delta imposed a first bag fee, AirTran "would strongly consider it, yes."

21. AirTran's statement was not normal marketplace guidance to its

8

investors, but was a specific invitation to Delta to collude on the joint implementation of a first bag fee.

22.    Delta promptly accepted AirTran's invitation to collude.    On November 5, 2008, just nine days after Mr. Fornaro's invitation, Delta issued a press release announcing that it would begin charging passengers a $15 first bag fee, effective December 5, 2008.    The very next day, on November 6, 2008, AirTran issued a public statement that reassured Delta that AirTran would follow through on its promise to match Delta's fee:   AirTran's spokeswoman, Judy Graham-Weaver, stated that AirTran would likely make an announcement regarding a new first bag fee policy the following week.    True to its word, on November 12, 2008, AirTran announced that it would impose a $15 first bag fee, effective December 5, 2008.    This was the exact same fee as Delta's with the exact same effective date.

*The Pretext For – and Recognized Illegality of – Defendants' Scheme*

23.    Upon information and belief, both Delta and AirTran have recognized that their collusion has created substantial legal risk.    They have thus sought to minimize this risk in at least two ways.

24.    First, in an effort to mask the true purpose of imposing the $15 first bag fee, Delta issued a press release stating that the fee was being imposed to

conform its pricing to Northwest's. But this explanation was simply a pretext for the true impetus of imposing the fee: AirTran's invitation to collude. Having previously rejected imposing a first bag fee to conform its prices to Northwest's, Delta was now able to impose the fee knowing that its principal competitor would follow suit.

25.     Unlike Delta and AirTran, Delta and Northwest were not direct competitors. *See An Examination of the Delta-Northwest Merger: Hearing Before the Subcomm. on Antitrust, Competition Policy and Consumer Rights of the Senate Comm. On the Judiciary*, 110th Cong. 8 (2008) (statement of Doug Steenland, CEO, President and CEO, Northwest Airlines) ("The existing domestic and international route networks of Northwest and Delta are complementary, so the two carriers compete only to a minimal extent today. Of the more than 800 domestic nonstop routes that NW and DL collectively fly, there are only 12 non-stop city-pair overlaps."); *Id.* (statement of Richard Anderson, CEO, Delta Airlines) ("I will simply say that these two airlines have complementary networks; Delta's domestic focus is in the east and mountain west while Northwest focuses on the upper mid-west."). Neither Northwest nor Delta constrained the pricing of the other, which is why Northwest had previously implemented a $15 first bag fee and Delta had not. Moreover, Delta's acquisition of Northwest did not necessitate

10

that the companies conform first bag fees, as evidenced by the fact that (a) the organizations remain separate and (b) Delta had "studied" a first bag fee but did not plan to charge one even after it announced its acquisition of Northwest.

26.    In the first three months of 2009, Delta earned $160 million in baggage fee revenues, the vast majority of which – upon information and belief – consists of first bag fee revenues. Price increases of this magnitude do not occur simply by "conforming" pricing practices to a non-competing airline's, as Delta publicly announced.   Otherwise, Delta would have "conformed" its pricing practices with those of Northwest much earlier and earned much more in baggage fees.   Rather, Delta imposed its first bag fee only after its primary competitor assured Delta that it would follow Delta's lead.

27.    Second, having implemented a substantial price increase through collusion, both Delta and AirTran have subsequently adhered to strict antitrust compliance practices that would have avoided implementation of the first bag fee altogether. For example, during an April 21, 2009 analyst call, Delta's CEO was asked whether Delta was considering implementing additional baggage fees in the future.   He declined to respond because Delta's general counsel preferred that public statements of future pricing decisions comply with Department of Justice and Department of Transportation guidelines:

11

> I think Ben Hirst, our general counsel, would prefer that I
> not talk about any future ideas about where fees would
> go in the industry.  We are very careful about being
> certain we comply with the Department of Justice and
> Department of Transportation rules on those sorts of
> matters.

Richard Anderson, Delta CEO, Q1 2009 Earnings Call (April 21, 2009).

28.   Similarly, AirTran has demonstrated a reluctance (that previously did

not exist) to publicly share competitively sensitive information.  For example, in

stark contrast to AirTran's prior assurances to Delta that it would follow Delta's

lead in implementing a first bag fee, AirTran's most recent description on an

analyst call of additional "ancillary revenue initiatives" demonstrates a new-found

commitment to antitrust compliance:

> Q:   Just on ancillary revenue, that's certainly been
> boosting the revenue trend pretty significantly this
> quarter for sure.  Can you just talk about [how] you see
> ancillary revenues kind of developing throughout the
> year, if there are any kind of important time that we
> should be aware of when different fees came on and what
> other ancillary revenue initiatives if any you are currently
> considering?
>
> A:  John, this is Kevin Healy.  Really not going to get
> into the specifics of the ancillary programs that we have,
> but we've made a number of changes over the last year or
> so and tweak the way that in some cases how we
> presented as well.  So I think changes in the presentation
> and some potential new programs for competitive
> reasons, we won't go into.

Kevin Healy, Senior Vice President Marketing and Planning, Q1 Earnings Call
(April 22, 2009).  During this call, AirTran even expressed "concern" that the
airline "industry has a habit of being very self destructive by sharing too much
information with your competition." *Id.*  Had AirTran been similarly sensitive to
sharing information with its competition in the fall of 2008, consumers who fly
Delta and AirTran would not have had to pay a $15 first bag fee.

### Direct Anticompetitive Effects

29.    Defendants' unlawful conduct has had direct, substantial, and adverse
effects on competition by foreclosing competition on the basis of price.  But for
Defendants' unlawful conduct, Plaintiffs and the Class would not have been
charged first bag fees by Defendants.

30.    As a direct consequence of Defendants' illegal acts, Plaintiffs and the
Class have sustained losses and damages to their business and property in the form
of overcharges for first bag fees.

31.    Plaintiffs and the Class are threatened with further injury unless
Defendants are enjoined from continuing the unlawful conduct alleged herein and
from entering into any other combinations, conspiracies, and/or agreements having
similar purposes and effects.  All Class members were affected in the same manner
by Defendants' unlawful conduct.

## The Relevant Markets for Passenger Airline Services

32.     Delta and AirTran provide regularly scheduled service between a city of origin and a city of destination.   Such origin-destination combinations are known in the industry as "city pairs."  Considering that Delta and AirTran imposed a first bag fee on all domestic city pairs they serve, the relevant product and geographic market for purposes of this action is domestic airline passenger service city pairs served by either Delta or AirTran.

33.     In the alternative, the relevant product and geographic submarkets for purposes of this action are Delta's and AirTran's domestic airline passenger service city pairs served from Atlanta Hartsfield-Jackson Airport.   Passengers traveling to or from Hartsfield-Jackson Airport on a particular city-pair route do not view service in alternative city pairs as a reasonable substitute:   they are unlikely to substitute travel to a different destination in response to a fare increase for a city-pair served from Atlanta.

34.     Hartsfield-Jackson Airport serves as the primary hub of both Delta and AirTran, and the Defendants compete for consumers flying in and out of Atlanta.   Until the fall of 2008, this competition restrained both airlines from implementing first bag fees.

35.     Delta is the dominant competitor for city pairs served from Hartsfield-

14

Jackson Airport, with approximately 70 percent market share of domestic flights in or out of the airport.  AirTran is the second largest competitor for domestic city pairs served from Hartsfield-Jackson Airport, with approximately 22 percent market share.  Delta and AirTran collectively account for approximately 92 percent of the domestic airline traffic to and from Hartsfield-Jackson.  Accordingly, Defendants have market power on city pairs served from Hartsfield-Jackson in that they have the power to control prices and exclude competition.

36.    The relevant market and submarkets defined above are in and part of interstate commerce, and Defendants' actions in these markets substantially affect interstate commerce.

37.    The relevant markets and submarkets at issue are highly concentrated, and there are substantial barriers to market entry, including large up-front capital requirements, economies of scale, customer loyalty, commitment contracts with businesses, and restrictive practices limiting access to airports.

## Class Action Allegations

38.    Plaintiffs bring this action, pursuant to Fed. R. Civ. P. 23, on behalf of themselves and the following class:

> All persons or entities in the United States that directly paid Delta and/or AirTran first bag fees on domestic flights beginning December 5, 2008 and continuing until the effects of Delta's and AirTran's

15

anticompetitive conspiracy ceases.

39.    Excluded from this class are the Court and its officers, employees, and relatives; Defendants, their parents, subsidiaries, affiliates, and co-conspirators; and the federal government.

40.    Members of the class are so numerous and geographically dispersed across the United States that joinder is impracticable.  While the exact number of class members is unknown to Plaintiffs, it is believed to be in the thousands. Furthermore, the class is readily identifiable from information and records in possession of the Defendants.

41.    Questions of law and fact common to members of the class predominate over questions, if any, that may affect only individual class members because Defendants have acted on grounds generally applicable to the class.  Such generally applicable conduct is inherent in Defendants' wrongful conduct.  Among those common questions of law or fact are:

     a.  Whether the Defendants combined, agreed, and/or conspired to fix, raise, maintain, or stabilize prices for first bag fees;

     b.  The existence and duration of the illegal contract, combination, and/or conspiracy alleged herein;

     c.  Whether Defendants conspired to conceal their unlawful activities;

     d.  Whether the contract, combination, and/or conspiracy resulted in the implementation of the first bag fees;

16

e. Whether the contract, combination, and/or conspiracy caused the prices for first bag fees to be higher than they would have been in the absence of Defendants' conduct;

f. Whether Defendants' conduct violates the Clayton and Sherman Acts;

g. Whether Plaintiffs and other class members have sustained or continue to sustain damages as a result of Defendants' wrongful conduct, and, if so, the proper measure and appropriate formula to be applied in determining such damages;

h. Whether Plaintiffs and the other class members are entitled to an award of compensatory, treble, and/or punitive damages, and, if so, in what amount; and

i. Whether Plaintiffs and the other class members are entitled to, injunctive, or other equitable relief.

42.    Plaintiffs are members of the class and Plaintiffs' claims are typical of the claims of the members of the class.  Plaintiffs and all members of the class were damaged by the same wrongful conduct by the Defendants, i.e., they have paid first bag fees as a result of Defendants' wrongful conduct.

43.    Plaintiffs will fairly and adequately protect the interests of other class members because they have no interest that is antagonistic to or which conflicts with those of any other class member, and Plaintiffs are committed to the vigorous prosecution of this action and have retained competent counsel experienced in litigation of this nature to represent Plaintiffs and other members of the class.

17

44.     The prosecution of separate actions by individual members of the class would create the risk of inconsistent or varying adjudications with respect to individual members of the class, which would establish incompatible standards of conduct for Defendants.

45.     Defendants have acted or refused to act on grounds generally applicable to the class, thereby rendering injunctive or declaratory relief with respect to the class as a whole appropriate.

46.     This class action is the superior method for the fair and efficient adjudication of this controversy.  Class treatment will permit a large number of similarly-situated persons and/or entities to prosecute their claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that numerous individual actions would produce.  The damages sustained by individual class members, although meaningful, do not rise to the level where they would have a significant interest in controlling the prosecution of separate actions against these well-financed corporate defendants.

47.     The instant case will be eminently manageable as a class action. Plaintiffs know of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

18

## CAUSES OF ACTION

<u>Count I:  Conspiracy to Retrain Trade in Violation of Sherman Act § 1 (Delta and AirTran)</u>
(*Per Se* Unlawful and Rule of Reason)

48.    Plaintiffs repeat and reallege the allegations in Paragraphs 1 – 47 above as if fully set forth herein.

49.    Defendants entered a contract, combination and/or conspiracy in restraint of trade and commerce, the purpose and effect of which was to unreasonably fix or raise first bag fees in the domestic airline passenger service market served by Delta and AirTran and/or submarkets for flights originating or terminating at Atlanta Hartsfield-Jackson Airport. The contract, combination and/or conspiracy consists of a continuing agreement, understanding, and concert of action among Defendants.

50.    The acts done by each of the Defendants as part of, and in furtherance of, their contract, combination and/or conspiracy were authorized, ordered, or done by their officers, agents, employees, affiliates, owners, or representatives while actively engaged in the management of Defendants' affairs.

51.    Defendants' practices constitute an unreasonable restraint on competition, the net effects of which are anticompetitive. Defendants' actions lack any legitimate business justification, and any purported business justifications are

pretextual.

52.    Defendants' unlawful conduct substantially and adversely affects interstate commerce in the relevant market and submarkets.

53.    Defendants, by and through their anticompetitive actions as outlined herein, have violated Section 1 of the Sherman Act, 15 U.S.C. § 1. Without limitation, Defendants' contract, combination and/or conspiracy constitutes both a *per se* violation of the Sherman Act and a violation of the Sherman Act under the "rule of reason."

54.    As a direct and proximate result of Defendants' violations of the Sherman Act, Plaintiffs and class members have been harmed in an amount to be proven at trial. Plaintiffs and the Class are threatened with further injury unless Defendants are enjoined from continuing the unlawful conduct alleged herein and from entering into any other combinations, conspiracies or agreements having similar purposes and effects. All Class members paid overcharges as a result of Defendants' conduct and thus were affected in the same manner by Defendants' illegal conduct.

Count II:  Attempted Monopolization in Violation of Sherman Act § 2 (AirTran)

55.    Plaintiffs repeat and reallege the allegations in Paragraphs 1 – 54 above as if fully set forth herein.

20

56.    By inviting Delta to collude, AirTran has attempted to monopolize the domestic airline passenger service market served by Delta and AirTran and/or submarkets for flights originating or terminating at Atlanta Hartsfield-Jackson Airport.

57.    AirTran engaged in anticompetitive conduct with a specific intent to monopolize: by sharing in a public forum monitored by Delta that it would impose a first bag fee if Delta acted first, AirTran intended to – and did – communicate an offer to Delta to fix prices. This communication was not normal marketplace guidance, as evidenced by AirTran's subsequent refusal to share information concerning future "ancillary revenue initiatives" for "competitive" reasons.

58.    Considering that Delta accounts for roughly 70 percent of Hartsfield-Jackson Airport city pairs and AirTran accounts for roughly 22 percent of the airport's city pairs, AirTran's invitation to collude had a dangerous probability of success. Sharing future pricing decisions in forums typically monitored by competitors competing in highly concentrated markets or submarkets will likely lead to anticompetitive price coordination in violation of the Sherman Act.

59.    Plaintiffs and the Class are threatened with further injury unless AirTran is enjoined from sharing future pricing decisions in public forums and from otherwise attempting to enter into combinations, conspiracies or agreements

21

that violate the Sherman Act. All Class members were affected in the same manner by AirTran's illegal conduct.

## JURY TRIAL DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs, on their own behalf and on behalf of the class, demand a trial by jury of all claims asserted in this Complaint so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request entry of judgment:

a.   Certifying that this action may be maintained as a class action under Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure, appointing Plaintiffs as class representatives and their counsel as lead class counsel;

b.   Directing that reasonable notice of this action, as provided by Rule 23(c)(2) of the Federal Rules of Civil Procedure be given to members of the Class;

c.   Awarding Plaintiffs and the Class their full monetary damages to be proven at trial;

d.   Awarding Plaintiffs and the Class treble their monetary damages, pursuant to 15 U.S.C. § 15;

e.   Awarding Plaintiffs and the Class pre-and post-judgment interest on their damages;

22

f.    Awarding Plaintiffs and the Class the costs of this action and reasonable attorneys' fees pursuant to 15 U.S.C. § 15;

g.    Enjoining Defendants from continuing or resuming their unlawful and anticompetitive practices; and

h.    Awarding Plaintiffs and the Class such other and further relief as the Court deems just and proper.

Dated this 22nd day of May, 2009

_____

***Local Counsel***

Cale Conley
Richard Griggs
CONLEY GRIGGS LLP
4400 Peachtree Road NE
Atlanta, GA 30319
(404) 467-1155
(404) 467-1166 (fax)
cale@conleygriggs.com
richard@conleygriggs.com

***Lead Counsel for Plaintiffs and the Class***

Daniel A. Kotchen
Daniel L. Low
Kotchen & Low LLP
2300 M St., NW, Suite 800
Washington, DC 20037
(202) 416-1848 (Tel.)
(202) 280-1128 (Fax)

23

A. Hoyt Rowell, III
James L. Ward, Jr.
Bobby Wood
RICHARDSON, PATRICK, WESTBROOK & BRICKMAN, LLC
P.O. Box 1007
Mt. Pleasant, SC 29465
(843) 727-6682
jward@rpwb.com

R. Bryant McCulley
MCCULLEY MCCLUER PLLC
One Independent Drive, Suite 3201
Jacksonville, FL 32202
(904) 482-4073
(904) 354-4813 (fax)
bmcculley@mcculleymccluer.com

Stuart H. McCluer
MCCULLEY MCCLUER PLLC
1109 Van Buren Avenue
Oxford, MS 38655
(662) 236-1401
(662) 236-1974 (fax)
smccluer@mcculleymccluer.com

24