# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| IN RE: DELTA/AIRTRAN BAGGAGE FEE ANTITRUST LITIGATION | Civil Action No. 1:09-md-2089-TCB |
| | ALL CASES |

# DEFENDANT DELTA AIR LINES, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. iii

PRELIMINARY STATEMENT .......................................................................... 1

ARGUMENT ....................................................................................................... 6

  I.  COUNT ONE OF THE COMPLAINT SHOULD BE DISMISSED BECAUSE THE COMPLAINT FAILS TO STATE A CLAIM UNDER SECTION 1 OF THE SHERMAN ACT ........................................6

    A.  The Complaint's Allegations Concerning The Imposition By Delta, And Then AirTran, Of A $15 First Bag Fee Do Not State A Claim Under Section 1 Of The Sherman Act ...................................6

    B.  The Complaint's Allegations Concerning Capacity Adjustments Do Not State A Claim Under Section 1 Of The Sherman Act ..............13

    C.  Allegations About "Joint" Or "Coordinated" "Negotiations" With Hartsfield-Jackson Airport Cannot Serve As A Basis For Liability Because Any Such Communications Are Protected By The First Amendment And The "*Noerr-Pennington*" Doctrine ...........19

    D.  Count One Should Be Dismissed Under The Doctrine Of Implied Preclusion ...........................................................................................20

  II.  COUNT THREE OF THE COMPLAINT SHOULD BE DISMISSED BECAUSE IT FAILS TO STATE A PROPER CLAIM FOR INJUNCTIVE RELIEF .................................................................................24

    A.  The Complaint Alleges Defendants Have Resumed Compliance With The Antitrust Laws ....................................................................24

    B.  The Request To Enjoin Delta From "Sharing Actual And Potential Future Competitive Actions Concerning Pricing And Capacity Cuts In Forums Monitored By Its Competitors" Seeks To Preclude Conduct That Is Not Actionable Under The Antitrust Laws ........................................................................................................27

C.   The Request To Enjoin Delta From "Otherwise Attempting To Enter Into Combinations, Contracts, And/Or Conspiracies That Violate The Sherman Act" Is Improper ...............................................32

CONCLUSION ...................................................................................34

# TABLE OF AUTHORITIES

**Cases**

*Aer-Flo Canvas Prods. v. Inland Tarp & Cover, Inc.*,
  2006 U.S. Dist. LEXIS 65979 (M.D. Fla. Sept. 14, 2006)...........................33

*Appleton v. Intergraph Corp.*,
  627 F. Supp. 2d 1342 (M.D. Ga. 2008) ......................................................... 7

*Ashcroft v. Iqbal*,
  129 S. Ct. 1937 (2009).............................................................................8, 26

*Atlanta Journal and Constitution v. City of Atlanta Dep't of Aviation*,
  442 F.3d 1283 (11th Cir. 2006) .................................................................. 19

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007).............................................................................*passim*

*Blomkest Fertilizer, Inc. v. Potash Corp.*,
  203 F.3d 1028 (8th Cir. 2000) ..................................................................... 9

*Catalano, Inc. v. Target Sales, Inc.*,
  446 U.S. 643 (1980) ..................................................................................... 9

*Citizens United v. FEC*,
  130 S. Ct. 876 (2010)...................................................................................28

*City of Atlanta v. WH Smith Airport Servs., Inc.*,
  659 S.E.2d 426 (Ga. App. 2008) ................................................................ 19

*City of Tuscaloosa v. Harcros Chemicals, Inc.*,
  158 F.3d 548 (11th Cir. 1998)..................................................................6, 12

*Credit Suisse Sec. (USA) LLC v. Billing*,
  551 U.S. 264 (2007).............................................................20, 21, 22, 29

*Eastern R. R. Presidents Conference v. Noerr Motor Freight, Inc.*,
  365 U.S. 127 (1961)......................................................................... 19-20, 28

*Electronic Trading Group, LLC v. Banc of America Sec. LLC*,
  588 F.3d 128 (2d Cir. 2009)........................................................................21

*First Nat. Bank of Boston v. Bellotti*,
  435 U.S. 765 (1978)............................................................................. 28-29

*Gordon v. New York Stock Exch., Inc.*,
    422 U.S. 659 (1975)................................................................20, 31

*Greenwood Utilities Comm'n v. Mississippi Power Co.*,
    751 F.2d 1484 (5th Cir. 1985)...........................................20

*Griffin Indus., Inc. v. Irvin*,
    496 F.3d 1189 (11th Cir. 2007)..........................................26

*Hirsch v. Arthur Andersen & Co.*,
    72 F.3d 1085 (2d Cir. 1995)...............................................26

*In re Airline Ticket Comm'n Antitrust Litig.*,
    953 F. Supp. 280 (D. Minn. 1997) ....................................12

*In re Digitek Products Liability Litig.*,
    2009 WL 2433468 (S.D. W.Va. Aug. 3, 2009) .....................18

*In re G-Fees Antitrust Litig.*,
    584 F. Supp. 2d 26 (D.D.C. 2008) ................................ 26-27

*In re LTL Shipping Servs. Antitrust Litig.*,
    2009 WL 323219 (N.D. Ga. Jan. 28, 2009).......................8, 28

*In re Mercedes-Benz Tele Aid Contract Litig.*,
    257 F.R.D. 46 (D.N.J. 2009) ............................................. 19

*In re Mutual Fund Sales Antitrust Litig.*,
    374 F. Supp. 95 (D.D.C. 1973) .........................................31

*In re Nifedipine Antitrust Litig.*,
    335 F. Supp. 2d 6 (D.D.C. 2004) ......................................27

*In re Travel Agent Comm'n Antitrust Litig.*,
    583 F.3d 896 (6th Cir. 2009)........................................ 3-4, 12

*Kendall v. Visa USA, Inc.*,
    518 F.3d 1042 (9th Cir. 2008).......................................11, 17

*Leegin Creative Leather Products, Inc. v. PSKS, Inc.*,
    551 U.S. 877 (2007)...........................................................32

*Levitch v. Columbia Broadcasting Sys., Inc.*,
    495 F. Supp. 649 (S.D.N.Y. 1980) ....................................28

*McKinnie v. Waynesboro Police Dep't*,
    2009 U.S. Dist. LEXIS 104189 (S.D. Ga. Oct. 15, 2009)............33

*Pleasant Grove City v. Summum,*
129 S. Ct. 1125 (2009) ................................................................29

*Posey v. Alternative Home Health Care of Lee County, Inc.,*
2008 U.S. Dist. LEXIS 38896 (M.D. Fla. May 13, 2008) ...........................33

*Prado-Steiman ex rel. Prado v. Bush,*
221 F.3d 1266 (11th Cir. 2000) ....................................................30

*Schmidt v. Lessard,*
414 U.S. 473 (1974).................................................................33

*Sea Air Shuttle Corp. v. Virgin Islands Port Auth.,*
782 F. Supp. 1070 (D.V.I. 1991).....................................................20

*Seagood Trading Corp. v. Jerrico, Inc.,*
924 F.2d 1555 (11th Cir. 1991)....................................................3, 7

*Sinaltrainal v. Coca-Cola Co.,*
578 F.3d 1252 (11th Cir. 2009) ............................................4, 17, 26

*Spectrum Sports v. McQuillan,*
506 U.S. 447 (1993)................................................................ 30

*Thompson v. Fla. Bar,*
526 F. Supp. 2d 1264 (S.D. Fla. 2007) .............................................26

*United Mine Workers of America v. Pennington,*
381 U.S. 657 (1965)................................................................20

*United States v. American Airlines, Inc.,*
743 F.2d 1114 (5th Cir. 1984)...................................................... 30

*United States v. Gen. Motors Corp.,*
1974 WL 926 (E.D. Mich. Sept. 26, 1974)............................................ 9

*United States v. Nat'l Ass'n of Sec. Dealers, Inc.,*
422 U.S. 694 (1975)............................................................20, 31

*United States v. Oregon,*
343 U.S. 326 (1952)................................................................25

*United States v. Standard Oil Co.,*
316 F.2d 884 (7th Cir. 1963) ....................................................... 9

*Whitmore v. Arkansas,*
495 U.S. 149 (1990)................................................................26

*Wielgos v. Commonwealth Edison Co.*,
892 F.2d 509 (7th Cir. 1989)....................................................23

*Williamson Oil Co., Inc. v. Philip Morris USA*,
346 F.3d 1287 (11th Cir. 2003)................................12, 14, 27-28

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
395 U.S. 100 (1969)...............................................................25

**Constitutional Provisions, Federal Statutes & Legislative Materials**

U.S. Const. amend. I. .......................................................28, 29

15 U.S.C. § 1 .................................................................*passim*

15 U.S.C. § 2 .................................................................*passim*

15 U.S.C. § 26 ......................................................................24

15 U.S.C. §§ 7261-66 ............................................................22

H.R. Rep. No. 104-369 (1995), *as reprinted in* 1995 U.S.C.C.A.N. 730 ............. 23

Private Securities Litigation Reform Act of 1995,
Pub. L. No. 104-67, 109 Stat. 737 ...................................... 22

S. Rep. No. 104-98 (1995), *as reprinted in* 1995 U.S.C.C.A.N. 679 ................... 22

Securities Act of 1933, 15 U.S.C. § 77a.................................22

Securities Exchange Act of 1934, 15 U.S.C. § 78a................................22

**Federal Rules & Regulations**

Fed. R. Civ. P. 15...............................................................19

Fed. R. Civ. P. 23(b) ..........................................................24

Fed. R. Civ. P. 65(d) .....................................................32, 33

Fed. R. Evid. 201(d)........................................................18, 19

SEC, *Commission Guidance Regarding Management's Discussion
and Analysis of Financial Condition and Results of Operations*,
68 Fed. Reg. 75056 (Dec. 29, 2003)........................................ 22

SEC, *Selective Disclosure and Insider Trading*,
65 Fed. Reg. 51716-01 (Aug. 24, 2000) .................................... 22

Defendant Delta Air Lines, Inc. ("Delta") respectfully submits this memorandum of law in support of its motion to dismiss the Consolidated Amended Class Action Complaint (Dkt. 53) ("Complaint") pursuant to Federal Rule of Civil Procedure 12(b)(6).

## PRELIMINARY STATEMENT

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court made clear that defendants in antitrust cases should not be subjected to the significant burdens and expenses of litigation unless the plaintiff describes an agreement actionable under the antitrust laws, and proffers "enough factual matter (taken as true) to suggest that an *agreement was made*." *Twombly*, 550 U.S. at 556 (emphasis added); *see id.* at 558 ("'[T]he costs of modern federal antitrust litigation and the increasing caseload of the federal courts counsel against sending the parties into discovery when there is no reasonable likelihood that the plaintiffs can construct a claim from the events related in the complaint.'") (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)). Put differently, to survive a Rule 12(b)(6) motion, an antitrust complaint must contain "enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal agreement." *Id.* at 556. Importantly, allegations of an unlawful

agreement must constitute "more than labels and conclusions" and contain more than a "formulaic recitation of the elements of a cause of action." *Id.* at 555.

The Complaint filed by Plaintiffs in this case is a classic example of one which fails to meet the requirements identified in *Twombly*. The Complaint alleges that (for a period of time during 2008) Delta and AirTran agreed "not to compete."[1] *See* Compl. ¶¶ 1, 28, 31, 58, 60. The Complaint further alleges that this alleged agreement "not to compete" "affected competition" in two ways: (1) the adoption by each airline of a $15 first bag fee, and (2) reductions of capacity on routes to and from Hartsfield-Jackson Airport in Atlanta. *See* Compl. ¶ 58.

As for the adoption of a first bag fee by Delta and then AirTran, the allegation of unlawful conduct is premised entirely on Plaintiffs' theory that (1) AirTran President and CEO Robert Fornaro's response to a question from a securities analyst (in which he stated that AirTran "would strongly consider" implementing a first bag fee if Delta imposed a first bag fee) constituted an

---

[1] The Complaint alleges that at some time – seemingly late in 2008 or early in 2009 – the Defendants resumed their compliance with the antitrust laws. *See* Compl. ¶ 64 ("After implementing a substantial price increase [in November 2008] through collusion, both Delta and AirTran *have subsequently adhered* to antitrust compliance practices that were not in place when the airlines reached an agreement in 2008.") (emphasis added); *see also* Compl. ¶ 65 (citing April 2009 statements by AirTran which "demonstrate[d] a new-found commitment to antitrust compliance")

invitation to collude, and (2) Delta's subsequent adoption of a first bag fee was an acceptance of that "invitation." But the facts advanced in the Complaint regarding the adoption of a first bag fee fail to allege the "'unity of purpose or a common design and understanding, or a meeting of minds [required for] an unlawful arrangement.'" *Seagood Trading Corp. v. Jerrico, Inc.*, 924 F.2d 1555, 1573 (11th Cir. 1991) (quoting *American Tobacco Co. v. United States*, 328 U.S. 781, 810 (1946)). No such "unity of purpose," "common design and understanding," or "meeting of minds" could be inferred from (1) AirTran's public statements during its October 23, 2008 earnings call, (2) Delta's subsequent public announcement of its decision to adopt a first bag fee, and (3) AirTran's public match of that fee.

Stripped of Plaintiffs' legal conclusion that these facts amount to an unlawful agreement, there is nothing left in the Complaint about the adoption a first bag fee by each airline other than allegations of "conscious parallelism" which, standing alone, cannot support an inference of conspiracy. *See Twombly*, 550 U.S. at 553-54 ("'[C]onscious parallelism,' a common reaction of 'firms in a concentrated market [that] recogniz[e] their shared economic interests and their interdependence with respect to price and output decisions' is 'not in itself unlawful.'") (quoting *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 227 (1993)); *In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d

896, 902-03 (6th Cir. 2009) ("In the wake of *Twombly*, allegations of parallel conduct and bare assertions of conspiracy no longer supply an adequate foundation to support a plausible § 1 claim.").

As for alleged capacity reductions, the Complaint relies again on entirely conclusory characterizations of statements made by Delta and AirTran to the investment community about a matter of vital interest to investors – each airline's plans for responding to unprecedented, rapid and substantial increases in the price of fuel, and to the onset of the "worst recession since the Great Depression." Compl. ¶ 58. The Complaint strains to turn descriptions of Delta's and AirTran's separate plans for responding to the economic crisis and statements of their respective opinions about how the airline industry should respond – many of which are reflected in contemporaneous filings submitted to the Securities and Exchange Commission – into communications that comprise an unlawful conspiracy. But the quoted statements by Delta and AirTran do not even address each other. Indeed, the only time that AirTran is mentioned at all by Delta, it is in direct response to a question from an analyst. *See* Compl. ¶ 42. Plaintiffs' attempts to twist the public statements cited in Complaint into conspiratorial acts do not withstand scrutiny – and should not be credited by the Court, even at the 12(b)(6) stage. *See*, *e.g.*, *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009) ("In

evaluating the sufficiency of a plaintiff's pleadings, we make reasonable inferences in Plaintiff's favor, but we are not required to draw plaintiff's inference.  Similarly, unwarranted deductions of fact in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations.") (internal quotations and citations omitted).

Count III of the Complaint alleges that Delta engaged in "attempted monopolization" by making public statements about its "actual and potential future competitive actions" (Compl. ¶ 96), and seeks an injunction to preclude Delta from (1) "sharing actual and potential future competitive actions concerning pricing and capacity cuts in forums monitored by its competitors," and (2) "otherwise attempting to enter into combinations, contracts, and/or conspiracies that violate the Sherman Act."  Compl. ¶ 98.  However, as already discussed, Delta's statements cannot reasonably be interpreted as offers to collude.  Further, as explained below, Plaintiffs' request for injunctive relief is inconsistent with the antitrust laws, the First Amendment, Federal Rule of Civil Procedure 65, and well-established case law, and must be dismissed.

## ARGUMENT

## I. COUNT ONE OF THE COMPLAINT SHOULD BE DISMISSED BECAUSE THE COMPLAINT FAILS TO STATE A CLAIM UNDER SECTION 1 OF THE SHERMAN ACT

"It is settled law that a threshold requirement of every antitrust conspiracy claim" brought under Section 1 "is 'an *agreement* to restrain trade.'" *City of Tuscaloosa v. Harcros Chemicals, Inc.*, 158 F.3d 548, 569 (11th Cir. 1998) (quoting *Seagood Trading Corp. v. Jerrico, Inc.*, 924 F.2d 1555, 1573 (11th Cir. 1991)). Under controlling Supreme Court precedent, to survive a motion to dismiss a complaint's allegations regarding an unlawful agreement must be "more than labels and conclusions," and contain more than a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

Applying this standard, Plaintiffs have failed to state a claim for relief under Section 1 of the Sherman Act, and Count I must be dismissed.

### A. The Complaint's Allegations Concerning The Imposition By Delta, And Then AirTran, Of A $15 First Bag Fee Do Not State A Claim Under Section 1 Of The Sherman Act

The Complaint contends that Delta and AirTran violated Section 1 of the Sherman Act by each imposing a $15 first bag fee in late 2008. *See, e.g.*, Compl. ¶¶ 55-57, 83. This contention is premised on a discrete factual assertion: that AirTran used an October 23, 2008 public earnings call as a vehicle to communicate

to Delta an "invitation" to collude, when AirTran President and CEO Robert Fornaro – in response to a question from a securities analyst – stated that AirTran "would strongly *consider*" implementing a first bag fee if Delta imposed a first bag fee. *See* Compl. ¶ 55 (emphasis added). The Complaint theorizes that an unlawful "agreement" was then formed when Delta subsequently announced it would begin charging passengers a $15 first bag fee, effective December 5, 2008, and AirTran announced a week later that it would impose its own $15 first bag fee. *See* Compl. ¶¶ 56-57.

This theory of an unlawful agreement is inconsistent with long-established antitrust jurisprudence, which requires "'a unity of purpose or a common design and understanding, or a meeting of minds in an unlawful arrangement.'" *Seagood*, 924 F.2d at 1573 (quoting *American Tobacco Co. v. United States*, 328 U.S. 781, 810 (1946)); *see also Twombly*, 550 U.S. at 557 (discussing necessity of "meeting of the minds" for Section 1 claim). The Complaint does not allege any such "meeting of minds" about the imposition of a first bag fee. *Cf. Appleton v. Intergraph Corp.*, 627 F. Supp. 2d 1342, 1352 (M.D. Ga. 2008) ("It is not sufficient that the facts in the complaint be *consistent with* a meeting of the minds; the plaintiff must instead plead facts that go beyond this to suggest that there *actually was* an agreement.") (emphasis in original).

The only *facts* alleged as to the supposed bag fee conspiracy are (1) AirTran's public statement, (2) Delta's subsequent action to adopt a first bag fee, and (3) AirTran's adoption of a fee after Delta's action. This is not an "agreement" prohibited by the antitrust laws – and the Complaint's conclusory label cannot avoid this fundamental legal infirmity of the Complaint. *See Twombly*, 550 U.S. at 555 ("[O]n a motion to dismiss, courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'") (quoting *Papasan v. Allain,* 478 U.S. 265, 286 (1986)); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1951 (2009) (conclusory allegations are "not entitled to be assumed true"); *In re LTL Shipping Servs. Antitrust Litig.*, 2009 WL 323219, *8 (N.D. Ga. Jan. 28, 2009) ("A Plaintiff . . . cannot state an antitrust claim by showing only that the Defendants made price information publicly available and thus had the opportunity to conspire – a 'conspired in the open' sort of argument.").

Moreover, contrary to Plaintiffs' view, Mr. Fornaro's statement itself fails to support the theory of "agreement" through a public "offer" by Mr. Fornaro. Mr. Fornaro's statement did not commit AirTran to a specific course of action if Delta adopted a first bag fee. *See* Compl. ¶ 55 (AirTran "would strongly *consider* it, yes.") (emphasis added). To the contrary, his statements on the October 23, 2008 AirTran earnings call expressly left open the possibility that AirTran might adopt a

first bag fee even if Delta did *not* do so. *See id.* ("*And at this point*, we have elected not to do it"; "I'm not saying we won't do it. *But at this point*, I think we prefer to be a follower . . . .") (emphasis added). And nothing about Mr. Fornaro's statement suggested AirTran had reached any decision about whether to adopt a first bag fee. But even if it had, the statement would not provide a basis for inferring an unlawful agreement because "advance price announcements are perfectly lawful." *Catalano, Inc. v. Target Sales, Inc.*, 446 U.S. 643, 647 (1980); *see also Blomkest Fertilizer, Inc. v. Potash Corp.*, 203 F.3d 1028, 1037 (8th Cir. 2000); *United States v. Gen. Motors Corp.*, 1974 WL 926, at *21 (E.D. Mich. Sept. 26, 1974) ("The public announcement of a pricing decision cannot be twisted into an invitation or signal to conspire; it is instead an economic reality to which all other competitors must react.").

In addition, under Plaintiffs' novel theory of the law, once Mr. Fornaro stated publicly, in response to an analyst's question, that AirTran would "strongly consider" adopting a first bag fee if Delta did so, Delta was thereby legally disabled from adopting its own first bag fee – even if it had been in Delta's independent economic interest to do so. This is not the law. *See, e.g.*, *United States v. Standard Oil Co.*, 316 F.2d 884, 896 (7th Cir. 1963) ("[A]ny defendant which heard of [its alleged co-conspirator's] price announcement was not thereby

immobilized and precluded from acting in a normal fashion as its interests might dictate so long as it was not pursuant to an understanding or agreement.").[2]

Despite whatever Mr. Fornaro said, Delta was free to adopt or not adopt a first bag fee, based upon its assessment of its own best interests. Indeed, the Complaint even refers to an important event which led Delta, based upon its own business interests, to act when it did to impose a first bag fee in November 2009. On October 29, 2008, six days after the AirTran statement was made, the Department of Justice approved the acquisition by Delta of Northwest Airlines and the two carriers merged. *See* Compl. ¶¶ 13, 35, 45, 56, 62, 63 (referring to Delta-Northwest merger). As reflected in an earnings call transcript cited by Plaintiffs (*see* Appx. Exh. 32, at 2),[3] Delta had previously committed to a "seamless integration of the two airlines" – meaning that the policies and practices of the two carriers would be aligned upon merging. Because at the time the merger was approved Northwest charged a bag fee, but Delta did not (*see* Compl. ¶ 45), the

---

[2] It would be anomalous if the law were otherwise. A firm would be able to freeze competitors from reacting to market changes in a way that it is in the competitor's independent economic interests simply by making public its intentions to lower or raise price, which firms do regularly for legitimate business reasons.

[3] Citations to "Appx. Exh. __" refer to Defendants' Joint Appendix Filed in Support of Their Respective Motions to Dismiss the Consolidated Amended Class Action Complaint.

merger required Delta to make a decision about whether the combined carrier would charge a first bag fee. Foregoing a bag fee for the combined carrier would have meant not only sacrificing revenues that Delta would earn from the fee, but revenues that Northwest was already earning. Moreover, as the Complaint recognizes, all of Delta's legacy carrier competitors – which, unlike AirTran, compete with Delta across Delta's entire domestic network – had already adopted the first bag fee. *See* Compl. ¶ 25. Thus, the allegations concerning Delta's decision to charge a first bag fee, which was announced with several other changes to align Delta and Northwest fees,[4] "could just as easily suggest rational, legal business behavior by the defendants as they could suggest an illegal conspiracy," and therefore "are insufficient to plead a violation of the antitrust laws." *Kendall v. Visa USA, Inc.*, 518 F.3d 1042, 1049 (9th Cir. 2008); *see also Twombly*, 550 U.S. at 554 ("The inadequacy of showing parallel conduct or interdependence, without more, mirrors the ambiguity of the behavior: consistent with conspiracy, but just as much in line with a wide swath of rational and competitive business strategy unilaterally prompted by common perceptions of the market.").

Stripped of Plaintiffs' legal conclusion that these facts amount to an unlawful agreement, the Complaint alleges no more than lawful interdependent

---

[4] *See* Compl. ¶ 56 (citing Nov. 5, 2008 Delta Press Release); Appx. Exh. 43.

conduct. As the Eleventh Circuit has observed, "in competitive markets, particularly oligopolies, companies will monitor each other's communications with the market in order to make their own strategic decisions." *Williamson Oil Co., Inc. v. Philip Morris USA*, 346 F.3d 1287, 1305 (11th Cir. 2003) (internal quotation omitted). This is true of the airline industry. *See, e.g., In re Airline Ticket Comm'n Antitrust Litig.*, 953 F. Supp. 280, 283 (D. Minn. 1997) ("[I]n an oligopolistic market, such as that in which the airlines operate, rapid price coalescence is the norm and is not, in itself, illegal."). Such "conscious parallelism" cannot give rise to an inference of an unlawful agreement. *See Twombly*, 550 U.S. at 554; *Tuscaloosa*, 158 F.3d at 571 ("Consciously parallel behavior by oligopolists does not in itself support an inference of agreement, of 'a meeting of the minds,' any more strongly than it supports an inference of legal price maintenance or leadership."); *Williamson*, 346 F.3d at 1301 ("[I]t is well settled in this circuit that evidence of conscious parallelism [alone] does not permit an inference of conspiracy") (internal quotation omitted); *see also In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 904 (6th Cir. 2009) ("The *Twombly* decision provides an additional safeguard against the risk of 'false inferences from identical behavior' at an earlier stage of the trial sequence – the pleading stage.").

Because the Complaint fails to allege an unlawful agreement to impose a first bag fee, Count I of the Complaint must be dismissed insofar as that cause of action is based on Delta's and AirTran's imposition of a first bag fee in late 2008.

**B.**     **The Complaint's Allegations Concerning Capacity Adjustments Do Not State A Claim Under Section 1 Of The Sherman Act**

The Complaint also contends that Delta and AirTran violated Section 1 of the Sherman Act by colluding to reduce capacity on routes to and from Hartsfield-Jackson Airport through public statements to the investor community about their own capacity plans and opinions about the "industry" during a period of unprecedented, rapid and substantial increases in the price of fuel, and to the onset of the "worst recession since the Great Depression." Compl. ¶ 58. Plaintiffs' claim of an unlawful agreement to restrict capacity fails for several reasons.

First, as with the allegations concerning a first bag fee, the Complaint fails to allege an *actual* agreement – *i.e.*, a "meeting of minds" – to effectuate capacity reductions. In fact, like the statement by Mr. Fornaro on which Plaintiffs rely to press their bag fee allegations (*see supra* Section I.A.), examination of the statements cited in the Complaint about capacity undercut rather than support the theory that Delta and AirTran reached an agreement to make capacity reductions. For instance, Plaintiffs emphasize a statement by Delta's Ed Bastian that "everybody is watching each other in terms of how the capacity [is] coming over,

and exactly what's coming out." Compl. ¶ 41;[5] *see also* Compl. ¶ 43 (Delta CEO, Richard Anderson: "While there have been a number of announcements, *we still need to see what the final schedules are . . . .*") (emphasis added).[6] Rather than allege facts capable of constituting an "agreement," the Complaint does no more than aver that Delta and AirTran were observing each other's public statements and decisions. But it is both routine and entirely lawful for firms in competitive markets to monitor each other's behavior "in order to make their own strategic decisions." *Williamson*, 346 F.3d at 1305. These and other allegations that Delta and AirTran monitored, and took into account, their competitors' actions with respect to capacity amount to no more than allegations of lawful interdependence

---

[5] If Delta and AirTran had reached an agreement regarding capacity as Plaintiffs allege *there would have been no need* for Delta to "watch" AirTran's future capacity adjustments because Delta would have known already what those adjustments were going to be.

[6] The failure to allege an actual agreement is illustrated by the fact that the Complaint does not describe any specific routes on which capacity allegedly was reduced, nor does it identify any time periods during which these alleged capacity reductions took place. *Cf. Twombly*, 550 U.S. at 550 n.3 ("Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests."). While the Complaint twice asserts an "agreement" "to reduce capacity" on flights to and from Hartsfield-Jackson (Compl. ¶¶ 58, 67), these conclusory assertions are insufficient to state a claim for relief. *Twombly*, 550 U.S. at 550.

and provide no basis for inferring an unlawful agreement. *Twombly*, 550 U.S. at 553-54.

Second, even if the Court could overlook the Complaint's failure to allege adequately an unlawful agreement to reduce capacity, the Court cannot accept Plaintiffs' conclusory and unsupportable characterizations of Delta's and AirTran's public statements regarding capacity as constituting and evidencing an unlawful agreement between the two airlines. Despite the length of the Complaint, and more than 100 references to "capacity," careful review of the pleading reveals that the statements by Delta and AirTran *are not directed to one another*. Tellingly, AirTran is mentioned only once in the Delta statements quoted in the Complaint (*see* Compl. ¶ 42) – and only in response to a question from an analyst specifically asking about any changes in Delta's capacity in AirTran markets:

> Q. (Kevin Crissey, UBS Analyst): Okay and then could you talk about – AirTran, according to the stock market and our numbers, AirTran is in significant number. ***Could you talk about your approach to AirTran [m]arkets and capacity cuts as it relates to those markets?***
>
> A. (Glen Hauenstein, Delta Executive Vice President Revenue & Network Management): There are no capacity cuts in AirTran [m]arkets. As a matter of fact, despite the fact we're down in general capacity by about 13 to 14% in the fall domestically, we're actually up in AirTran competitive markets into and out of Atlanta, some of the point to point flying we have taken reductions in. But into and out of Atlanta – of course Atlanta being our core strength market, we are continuing to leave that capacity in.

*See* Appx. Exh. 32, at 13 (Delta Air Lines, Inc., Q2 2008 Earnings Call Transcript (July 16, 2008)) (emphasis added).[7]   Delta's straightforward response to that question – that it had not reduced capacity in AirTran markets – hardly qualifies as an "invitation" to collude.

Confronted with this inconvenient fact, Plaintiffs attempt to stave off dismissal by alleging, "[u]pon information and belief," that Defendants' public references to the "industry" "typically are refer[ences] to each other." Compl. ¶ 20.   This allegation, however, is not only conclusory, but also is contradicted by material upon which the Complaint relies[8] – and therefore should

_____

[7]  When considering a motion to dismiss, the Court may review the full versions of documents quoted from or cited in the Complaint. *See Twombly*, 550 U.S. at 569 n.13 (2007) (citing Federal Rule of Evidence 201 and finding "the District Court was entitled to take notice of the full contents of the published articles referenced in the complaint, from which the truncated quotations were drawn").

[8]  For example, in Paragraph 33 of the Complaint, Plaintiffs quote a statement by AirTran's Vice President of Finance and Treasurer Arne Haak that: "Adapting to high energy prices is a challenge faced by all airlines. . . .  [W]e strongly believe that more industry capacity needs to be removed."  Plaintiffs assert that by "industry," Mr. Haak meant "Delta." *See* Compl. ¶ 33.  But Plaintiffs omit the sentence immediately preceding the quotation which contradicts their assertion: "[W]e are not immune to the challenges that face our *entire industry*.  Adapting to high energy prices is a challenge faced by *all airlines*." *See* Appx. Exh. 18, at 4 (AirTran Holdings, Inc., Q1 2008 Earnings Call Transcript (Apr. 22, 2008)) (emphasis added).  Similarly, Paragraph 36 of the Complaint contains a partial quotation from AirTran's CEO Robert Fornaro.  The partial quotation refers to possible action by "all carriers," which Plaintiffs interpret as referring to AirTran and Delta.  However, a review of the entire quotation reveals that Mr. Fornaro

not be accepted even at the 12(b)(6) stage. *See Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009).

Third, the antitrust laws do not permit predicating liability on the kinds of public statements by Defendants set out in the Complaint. It is well-established that "[a]llegations of facts that could just as easily suggest rational, legal business behavior by the defendants as they could suggest an illegal conspiracy are insufficient to plead a violation of the antitrust laws." *Kendall*, 518 F.3d at 1049; *Twombly*, 550 U.S. at 554 ("The inadequacy of showing parallel conduct or interdependence, without more, mirrors the ambiguity of the behavior: consistent with conspiracy, but just as much in line with a wide swath of rational and competitive business strategy unilaterally prompted by common perceptions of the market.").

There are numerous procompetitive reasons why airlines disclose publicly information about plans to increase or decrease capacity. As the earnings call transcripts cited by Plaintiffs make clear, during 2008 the investment community was understandably interested in how each airline would respond to highly volatile and increasing fuel prices, deteriorating economic conditions and the resulting

---

referred to three specific carriers (Southwest, Continental and American), but nowhere made reference to Delta. *See id.* at 7.

reduction in demand for airline service.  *See* Appx. Exh. 48, U.S. Dep't of Transp.,

Aviation Industry Performance: A Review of the Aviation Industry in 2008 (May

6, 2009) (describing industry-wide capacity reductions stemming from economic

conditions).[9]  In fact, as discussed in Section I.D. below, many of the statements

about capacity Plaintiffs claim are unlawful appear in Defendants' prior or

contemporaneous submissions to the Securities and Exchange Commission.  Thus,

the Complaint and the material upon which it relies themselves demonstrate that

Delta and AirTran had valid business justifications for making the particular public

statements about capacity cited in the Complaint, none of which depend on the

existence of an unlawful conspiracy.

For these reasons, Count I of the Complaint must be dismissed insofar as

that cause of action is based on Delta's and AirTran's public statements about

capacity.[10]

_____

[9]   Subject to judicial notice by the Court, pursuant to Federal Rule of Evidence 201.

[10]   Because the Complaint was filed pursuant to MDL proceedings, Delta respectfully submits Plaintiffs should not have been permitted to substantially change the nature of the complaints before the JPML (which focused narrowly on an alleged agreement to implement a first bag fee) by adding numerous new allegations concerning an alleged agreement to reduce capacity.  *Cf. In re Digitek Products Liability Litig.*, 2009 WL 2433468, at *8 (S.D. W.Va. Aug. 3, 2009) ("MDL courts have observed generally that a 'master complaint . . . should be considered as only an administrative device to aid efficiency and economy.'")

**C.** **Allegations About "Joint" Or "Coordinated" "Negotiations" With Hartsfield-Jackson Airport Cannot Serve As A Basis For Liability Because Any Such Communications Are Protected By The First Amendment And The "*Noerr-Pennington*" Doctrine**

The Complaint also attempts to predicate antitrust liability on alleged "joint" or "coordinated" "negotiations" with Hartsfield-Jackson Airport. *See* Compl. ¶¶ 1, 31, 59. Under Federal Rule of Evidence 201(d), the Court should take judicial notice of the fact that Hartsfield-Jackson Airport is owned and operated by the City of Atlanta.[11] And the law is clear that "negotiations" of the kind described in the Complaint are protected by the right to petition enshrined in the First Amendment, and are immune under the antitrust laws. *See, e.g., Eastern R. R. Presidents*

---

(citation omitted); *In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. 46, 56 (D.N.J. 2009) ("the majority of courts treat consolidated complaints filed in multi-district litigations as a procedural device rather than a substantive pleading"). Moreover, because Delta had already answered each individual complaint, any proposed substantive amendments should have been evaluated in accordance with Federal Rule of Civil Procedure 15. By responding to the new substantive allegations in the Consolidated Amended Class Action Complaint, Delta does not waive any rights or arguments regarding the substantive amendments first introduced by that Complaint, filed on February 1, 2010, including its contention that the amendments do not satisfy the conditions for "relation back" under Rule 15. *See* Fed. R. Civ. P. 15(c)(1).

[11] *See* Appx. Exh. 49 (from Hartsfield-Jackson website, identifying the City of Atlanta/Department of Aviation as the owner and operator of the Airport) (also available at http://www.atlanta-airport.com/Airport/ATL/ATL_FactSheet.aspx); *see also City of Atlanta v. WH Smith Airport Servs., Inc.*, 659 S.E.2d 426, 427 (Ga. App. 2008) ("The City of Atlanta owns the Hartsfield-Jackson Atlanta International Airport"); *Atlanta Journal and Constitution v. City of Atlanta Dep't of Aviation*, 442 F.3d 1283, 1284 (11th Cir. 2006).

*Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961); *United Mine Workers of America v. Pennington*, 381 U.S. 657, 671 (1965) ("*Noerr* shields from the Sherman Act a concerted effort to influence public officials regardless of intent or purpose."); *Greenwood Utilities Comm'n v. Mississippi Power Co.*, 751 F.2d 1484, 1499 (5th Cir. 1985); *Sea Air Shuttle Corp. v. Virgin Islands Port Auth.*, 782 F. Supp. 1070, 1077 (D.V.I. 1991) (holding defendant's negotiations with port authority for the lease of seaplane ramps were protected by the *Noerr-Pennington* doctrine).

Therefore, Count I of the Complaint must be dismissed to the extent it is predicated on Defendants' "negotiations" with the City of Atlanta concerning the Hartsfield-Jackson Airport.

### D. Count One Should Be Dismissed Under The Doctrine Of Implied Preclusion

Count I should also be dismissed under the doctrine of implied preclusion, foreclosing antitrust claims inconsistent with federal securities law – described by the Supreme Court most recently in *Credit Suisse Securities (USA) LLC v. Billing*, 551 U.S. 264 (2007). *See also Gordon v. New York Stock Exch., Inc.*, 422 U.S. 659 (1975); *United States v. Nat'l Ass'n of Sec. Dealers, Inc.*, 422 U.S. 694 (1975).

In *Credit Suisse*, the Court identified four considerations for determining whether antitrust claims are precluded by the securities laws: (1) whether the area

of conduct is within the "heartland" of securities regulation; (2) whether the Securities and Exchange Commission ("SEC") has clear and adequate authority to regulate; (3) whether there is active and ongoing SEC regulation; and (4) whether a "serious" conflict arises between antitrust law and securities regulation. *See Credit Suisse*, 551 U.S. at 285; *Electronic Trading Group, LLC v. Banc of America Sec. LLC*, 588 F.3d 128, 131 (2d Cir. 2009). Applied here, these considerations demonstrate the incompatibility of Plaintiffs' antitrust claims with federal securities laws.

There is no doubt the type of conduct upon which Plaintiffs seek to predicate liability is: (1) within the "heartland" of securities regulation; (2) within the scope of the SEC's regulatory authority; and (3) actively regulated by the SEC. Plaintiffs' core allegation is that Delta and AirTran used truthful public statements *to the investment community* about their respective business plans and views regarding the airline industry to collude with one another. *See, e.g.*, Compl. ¶ 29 ("AirTran and Delta used a series of earnings calls with analysts to signal their willingness to enter an agreement and ultimately reach an agreement."); *id.* ¶ 30 ("AirTran and Delta used appearances and attendance at industry conferences to reach and/or reinforce an agreement."). Regulating disclosures by public companies to the investment community and the public are among the core

functions of the SEC. *See, e.g.*, Securities Act of 1933, 15 U.S.C. § 77a *et seq.*;

Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.*; SEC, *Selective*

*Disclosure and Insider Trading*, 65 Fed. Reg. 51716-01 (Aug. 24, 2000)

("Regulation FD" governing disclosures by issuers); 15 U.S.C. §§ 7261-66

(provisions in Sarbanes-Oxley Act of 2002 imposing enhanced disclosure

requirements); SEC, *Commission Guidance Regarding Management's Discussion*

*and Analysis of Financial Condition and Results of Operations*, 68 Fed. Reg.

75056, 75059 (Dec. 29, 2003) (discussing Commission requirements "call[ing] for

companies to provide investors and other users with material information that is

necessary to an understanding of the company's financial condition and operating

performance, *as well as its prospects for the future*") (emphasis added). Like in

*Credit Suisse*, the actions challenged in the Complaint here are "central to the

proper functioning of well regulated capital markets . . . [and] lie at the very heart

of the securities marketing enterprise." *Credit Suisse*, 551 U.S. at 276.[12]

---

[12] Recognizing the importance of forward-looking statements to a well-functioning securities market, in 1995 Congress created a "safe harbor provision" for such statements as part of the Private Securities Litigation Reform Act of 1995 ("PSLRA"). *See* Pub. L. No. 104-67, 109 Stat. 737 (codified as 15 U.S.C. §§ 77z-2(c), 78u-5(c)). Congress found the "threat of mass shareholder litigation" had caused a "chilling" effect on disclosure of "forward-looking" information. S. Rep. No. 104-98, at 5 (1995), *as reprinted in* 1995 U.S.C.C.A.N. 679, 684 (internal quotations omitted)). The purpose of the "safe harbor" provision is to encourage issuers to make "forward looking statements" without "fear of open-ended

It is also evident that there exists a serious conflict between Plaintiffs' claims and the securities laws. The securities laws do not just permit, but encourage, truthful statements to the public and the investor community – including information about future plans and expectations. *Cf. Wielgos v. Commonwealth Edison Co.*, 892 F.2d 509, 514 (7th Cir. 1989) ("Investors value securities because of beliefs about how firms will do tomorrow, not because of how they did yesterday."). Imposing antitrust liability for the conduct at issue here – making truthful statements to the investment community and the public – would substantially undermine that objective. Plaintiffs' antitrust claims therefore must be dismissed under the doctrine of implied preclusion.[13]

---

liability." H.R. Rep. No. 104-369, at 32, 42-46 (1995), *as reprinted in* 1995 U.S.C.C.A.N. 730, 731, 741-45.

[13] Plaintiffs do not seek to impose liability for statements by Delta or AirTran in their respective SEC filings – nor could they, for various reasons. But the law does not permit an end-run of the sort Plaintiffs attempt by seeking to predicate liability on the "disclosure" of information on investor calls and conferences which is also contained in SEC filings. *See* Exh. A (comparing the "disclosures" upon which Plaintiffs seek to predicate antitrust liability with disclosures in Delta's and AirTran's SEC filings). Moreover, that many of the public "disclosures" which supposedly form the heart of the conspiracy were disclosed in prior or contemporaneous SEC filings (*see id.*) further renders Plaintiffs' novel conspiracy theory implausible.

## II. COUNT THREE OF THE COMPLAINT SHOULD BE DISMISSED BECAUSE IT FAILS TO STATE A PROPER CLAIM FOR INJUNCTIVE RELIEF

The Complaint seeks to enjoin Delta from (1) "sharing actual and potential future competitive actions concerning pricing and capacity cuts in forums monitored by its competitors," and (2) "otherwise attempting to enter into combinations, contracts, and/or conspiracies that violate the Sherman Act." Compl. ¶ 98. Neither of these two requests states a proper claim for injunctive relief, and Count III should be dismissed.[14]

### A. The Complaint Alleges Defendants Have Resumed Compliance With The Antitrust Laws

Count III alleges an attempt to monopolize in violation of Section 2 of the Sherman Act by Delta, and seeks injunctive relief only. Injunctive relief under the Sherman Act is governed by 15 U.S.C. § 26, which permits a plaintiff to sue for injunctive relief "against threatened loss or damage by a violation of the antitrust laws." As the Supreme Court has explained, to pursue a claim for injunctive relief under the antitrust laws, a plaintiff must "demonstrate a significant threat of injury

---

[14]  Plaintiffs also would be unable to obtain certification of a class for injunctive relief under Federal Rule of Civil Procedure 23(b)(2) because that provision "does not extend to cases in which the appropriate final relief relates exclusively or predominantly to money damages." Fed. R. Civ. P. 23(b)(2) advisory committee's note (1966 Amendment).

from an impending violation." *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 130 (1969); *see also United States v. Oregon*, 343 U.S. 326, 333 (1952) ("The sole function of an action for injunction is to forestall future violations.").

The Complaint fails to demonstrate any threat of *future* injury from any conduct by Delta. In fact, the Complaint itself demonstrates that the requirements for an injunction cannot be satisfied, because it specifically alleges that Delta (and AirTran) resumed their adherence to the antitrust laws some time ago.[15] *See* Compl. ¶ 64 ("[A]fter implementing a substantial price increase [in November 2008] through collusion, both Delta and AirTran *have subsequently adhered* to antitrust compliance practices that were not in place when the airlines reached an agreement in 2008.") (emphasis added);[16] Compl. ¶ 65 (citing April 2009 statements by AirTran which "demonstrate[d] a new-found commitment to antitrust compliance").

Although Count III alleges "Plaintiffs and the Class are threatened with further injury" unless an injunction against Delta is issued (Compl. ¶ 98), this is an

---

[15] Delta denies that it ever failed to comply with the antitrust laws.

[16] The last public statement cited by the Complaint as a basis for liability occurred during 2008. *See* Compl. ¶ 57.

entirely conclusory allegation insufficient to state a claim for injunctive relief,[17] and also is contradicted by the Complaint's specific allegations about Defendants' recent adherence to antitrust laws and company policies. *See, e.g.*, *Griffin Indus., Inc. v. Irvin,* 496 F.3d 1189, 1205-06 (11th Cir. 2007) ("Our duty to accept the facts in the complaint as true does not require us to ignore specific factual details of the pleading in favor of general or conclusory allegations."); *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995) ("conclusory allegations need not be credited . . . when they are belied by more specific allegations of the complaint"); *Thompson v. Fla. Bar*, 526 F. Supp. 2d 1264, 1278 (S.D. Fla. 2007) ("general allegations . . . need not be accepted as true because they are contradicted by more specific allegations in the complaint").

Thus, Count III must be dismissed for failure to state a claim. *See Whitmore v. Arkansas,* 495 U.S. 149, 158 (1990) ("Allegations of possible future injury do not satisfy the requirements of Art. III. A threatened injury must be 'certainly impending' to constitute injury in fact."); *cf. In re G-Fees Antitrust Litig.*, 584 F.

---

[17] *See, e.g.*, *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1951 (2009) (conclusory allegations are "not entitled to be assumed true"); *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009) ("In evaluating the sufficiency of a plaintiff's pleadings, we make reasonable inferences in Plaintiff's favor, but we are not required to draw plaintiff's inference. Similarly, unwarranted deductions of fact in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations.") (internal quotations and citations omitted).

Supp. 2d 26, 35 (D.D.C. 2008) ("Because plaintiffs have pled that they are threatened with future damages, but not with future injury, their federal claim for injunctive relief (Count II) will be dismissed for failure to state a claim upon which relief may be granted."); *In re Nifedipine Antitrust Litig.*, 335 F. Supp. 2d 6, 17 (D.D.C. 2004) ("When seeking injunctive relief to prevent a future injury, the plaintiff must show that he 'is immediately in danger of sustaining some direct injury' and that the threat of injury is 'real and immediate,' and not 'conjectural' or 'hypothetical'") (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)).

**B.** **The Request To Enjoin Delta From "Sharing Actual And Potential Future Competitive Actions Concerning Pricing And Capacity Cuts In Forums Monitored By Its Competitors" Seeks To Preclude Conduct That Is Not Actionable Under The Antitrust Laws**

The Complaint seeks to enjoin Delta "from sharing actual and potential future competitive actions concerning pricing and capacity cuts in forums monitored by its competitors." Compl. ¶ 98. For several reasons, this is not a proper claim for injunctive relief.

First, merely describing "actual" or "potential" "future competitive actions" in a public forum is not conduct the antitrust laws are designed to prevent. For instance, stating future plans – such as announcing prices prospectively – does not constitute an antitrust violation. *Williamson Oil Co. v. Philip Morris, USA*, 346

F.3d 1287, 1305 (11th Cir. 2003) ("[I]in competitive markets, particularly oligopolies, companies will monitor each other's communications with the market in order to make their own strategic decisions[.  As such], antitrust law permits such discussions even when they relate to pricing because the dissemination of price information is not itself a per se violation of the Sherman Act.") (internal quotation omitted); *In re LTL Shipping Servs. Antitrust Litig.*, 2009 WL 323219, *8 (N.D. Ga. Jan. 28, 2009) ("A Plaintiff . . . cannot state an antitrust claim by showing only that the Defendants made price information publicly available and thus had the opportunity to conspire.").

Second, the Speech Clause of the First Amendment precludes an interpretation of the Sherman Act which would render it unlawful for a company to disclose in public its "actual" or "potential" "future competitive actions."[18]  Like individuals, corporations enjoy the full benefits and protections of the First Amendment.  *See Citizens United v. FEC,* 130 S. Ct. 876, 899 (2010)*; First Nat.*

---

[18] The First Amendment states: "Congress shall make no law . . . abridging the freedom of speech . . . ."  U.S. Const. amend I.  The Sherman Act must be interpreted to avoid any potential conflict with the First Amendment.  *See, e.g.*, *Eastern R. R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 138 (1961).  As *Noerr* and its progeny have established, the antitrust laws seek only to prohibit certain economic activity which has been perceived, correctly or incorrectly, as anti-competitive.  "It was not the intent of Congress that . . . First Amendment protected conduct be within the scope of the antitrust laws." *Levitch v. Columbia Broadcasting Sys., Inc.*, 495 F. Supp. 649, 661 (S.D.N.Y. 1980).

*Bank of Boston v. Bellotti*, 435 U.S. 765, 777 (1978). Any restraint on Delta's First Amendment rights must be justified by a compelling governmental interest, and narrowly tailed to serve that interest. *See*, *e.g.*, *Pleasant Grove City v. Summum*, 129 S. Ct. 1125, 1132 (2009) ("any restriction based on the content of the speech must satisfy strict scrutiny, that is, the restriction must be narrowly tailored to serve a compelling government interest"). Measured against that standard, the request to enjoin all public statements about "future competitive actions" is clearly impermissible. There is no compelling interest warranting the relief sought. To the contrary, as discussed earlier, there are procompetitive reasons why a company would wish to disclose information about its future business plans. Indeed, such disclosures by public companies are critical for a well-functioning securities market, and are closely regulated by the Securities and Exchange Commission.[19] Moreover, the relief sought is patently overbroad, and fails to meet the requirement that any impairment of First Amendment rights be narrowly tailored.[20]

---

[19]   If the antitrust laws prohibited public statements about future business plans, many of the disclosures regulated (and even encouraged) by the SEC would run afoul of the antitrust laws. This evidences a clear incompatibility between Plaintiffs' legal theory and the securities laws. *Cf. Credit Suisse Sec. (USA) LLC v. Billing*, 551 U.S. 264 (2007). *See supra* Section I.D.

[20]   Plaintiffs also lack standing to assert claims for injunctive relief related to Delta's capacity adjustments because Plaintiffs do not allege they were affected by any alleged conduct concerning capacity adjustments. Plaintiffs only allege

Third, the claim for an injunction must be dismissed since describing "actual" or "potential" "future competitive actions" in a public forum is not actionable because such statements themselves, without more, cannot possibly give rise to "a dangerous probability of actual monopolization" – a requirement for establishing the offense of "attempted monopolization" under Section 2 of the Sherman Act, which is the basis for injunctive relief here. *See Spectrum Sports v. McQuillan*, 506 U.S. 447, 455 (1993). Unlike in *United States v. American Airlines, Inc.*, 743 F.2d 1114 (5th Cir. 1984), where American Airlines's President expressly and directly solicited price coordination with another airline during a private phone call with that airline's President, here there was no prospect that any

---

injuries related to alleged conduct resulting in the imposition of a first bag fee. *See* Compl. ¶ 2 (Plaintiffs seek relief "[o]n behalf of a Class of direct purchasers of Defendants' services who paid a first-bag fee"). This is evidenced by the definition of the putative class, which is limited to passengers who directly paid first bag fees to Delta or AirTran. *See* Compl. ¶ 72 ("All persons or entities in the United States that directly paid Delta and/or AirTran first bag fees on domestic flights from December 5, 2008 through the present (and continuing until the effects of Delta's and AirTran's anticompetitive conspiracy ceases."). Thus, Plaintiffs lack Article III standing to pursue claims for injunctive relief for conduct unrelated to bag fees. *See, e.g.*, *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1280 (11th Cir. 2000) ("It is not enough that a named plaintiff can establish a case or controversy between himself and the defendant by virtue of having standing as to one of many claims he wishes to assert. Rather, each claim must be analyzed separately, and a claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim.") (citation and internal quotations omitted).

of the general, public statements at issue could give rise to "a dangerous probability of actual monopolization."

Fourth, as explained above, Plaintiffs' claims are clearly incompatible with securities laws. *See supra* Section I.D. (addressing implied preclusion). This incompatibility not only precludes Plaintiffs' claim for damages under Section 1 of the Sherman Act, but also precludes their claim for injunctive relief brought under Section 2 of the Sherman Act. *See, e.g.*, *In re Mutual Fund Sales Antitrust Litig.*, 374 F. Supp. 95, 96-97 (D.D.C. 1973) ("The government complaint seeks only prospective, injunctive relief."), *aff'd sub nom. United States v. Nat'l Ass'n of Sec. Dealers, Inc.*, 422 U.S. 694 (1975) (dismissing antitrust claims under doctrine of implied preclusion); *Gordon v. New York Stock Exch., Inc.*, 422 U.S. 659 (1975) (finding claims precluded, including request for injunction).[21]

---

[21] That the remedy sought for the conduct at issue is a prohibition against "sharing actual and potential future competitive actions concerning pricing and capacity cuts in forums monitored by its competitors" only highlights the clear incompatibility between Plaintiffs' theory of antitrust liability and the securities laws, which pervasively regulate disclosures about "actual and potential future competitive actions."

**C. The Request To Enjoin Delta From "Otherwise Attempting To Enter Into Combinations, Contracts, And/Or Conspiracies That Violate The Sherman Act" Is Improper**

The Complaint also seeks an injunction to forbid Delta from "otherwise attempting to enter into combinations, contracts, and/or conspiracies that violate the Sherman Act." Compl. ¶ 98. This language directly tracks Section 1 of the Sherman Act, which renders unlawful "contract[s], combination[s] . . . or conspirac[ies], in restraint of trade or commerce." 15 U.S.C. § 1.[22] In other words, the Complaint seeks an injunction requiring Delta to abide by Section 1 of the Sherman Act. Such a request is improper, and fails to state a cognizable claim for injunctive relief.

Specifically, the request for an injunction that Delta obey Section 1 of the Sherman Act is inconsistent with Federal Rule of Civil Procedure 65(d)(1)(C), which requires that "[e]very order granting an injunction and every restraining order must . . . *describe in reasonable detail* – and not by referring to the complaint or other document – *the act or acts restrained or required*." An order requiring

---

[22] Subsequent to enactment of the Sherman Act, the Supreme Court explained that Section 1 only prohibits "unreasonable" restraints of trade. *See, e.g.*, *Leegin Creative Leather Products, Inc. v. PSKS, Inc.*, 551 U.S. 877, 885 (2007) ("While § 1 could be interpreted to proscribe all contracts, the Court has never taken a literal approach to [its] language[;] [r]ather, the Court has repeated time and again that § 1 outlaw[s] only *unreasonable* restraints.") (internal quotation and citations omitted) (emphasis added).

nothing other than to obey a statute does not satisfy Rule 65(d). *See Schmidt v. Lessard*, 414 U.S. 473, 476 (1974) ("As we have emphasized in the past, the specificity provisions of Rule 65(d) are no mere technical requirements . . . . Since an injunction order prohibits conduct under threat of judicial punishment, basic fairness requires that those enjoined receive explicit notice of precisely what conduct is outlawed."). Thus, it is unsurprising that courts routinely reject requests to issue injunctions which merely require the defendant to "obey the law." *See, e.g., McKinnie v. Waynesboro Police Dep't*, 2009 U.S. Dist. LEXIS 104189, *10 (S.D. Ga. Oct. 15, 2009) ("Fed. R. Civ. P. 65(d) requires requests for injunctions to be specific – an injunction which merely orders the defendant to obey the law is too broad and too vague to be enforceable."); *Posey v. Alternative Home Health Care of Lee County, Inc.*, 2008 U.S. Dist. LEXIS 38896, *9 (M.D. Fla. May 13, 2008) ("Plaintiff does not specify how the injunction should operate and a broad, non-specific injunction enjoining defendant to obey to the law is not proper without 'an operative command.'") (quoting *Hughey v. JMS Dev. Corp.*, 78 F.3d 1523, 1531 (11th Cir. 1996)); *Aer-Flo Canvas Prods. v. Inland Tarp & Cover, Inc.*, 2006 U.S. Dist. LEXIS 65979, *1 (M.D. Fla. Sept. 14, 2006) ("the proposed consent decree includes an unenforceable 'obey the law' injunction").[23]

---

[23] Like the request for an injunction to forbid Delta from describing "actual" or

# CONCLUSION

For the foregoing reasons, Counts I and III of Plaintiffs' Complaint should be dismissed with prejudice.[24]

---

"potential" "future competitive actions" in a public forum, the request for an "obey the law" injunction must be denied because Plaintiffs' underlying Section 2 claim does not allege facts sufficient to establish a "dangerous probability of actual monopolization," and is subject to implied preclusion. *See supra* at Section II.B.

[24] For the convenience of the Court, attached as Exhibit B is an annotated version of the Complaint which relates grounds for dismissal addressed herein to specific allegations in the Complaint. Because the purpose of Exhibit B is limited to aiding the Court in evaluating Delta's motion to dismiss, the Exhibit does not address numerous allegations and assertions not at issue in this motion (such as the appropriate market definition and the propriety of class certification), and Delta reserves all rights and arguments with respect to issues not addressed in the instant motion.

Dated: March 8, 2010                    Respectfully submitted,[25]

                                        s/ Randall L. Allen
                                        s/ Gregory B. Mauldin
                                        Randall L. Allen
                                        Georgia Bar No. 011436
                                        randall.allen@alston.com
                                        Nowell D. Berreth
                                        nowell.berreth@alston.com
                                        Georgia Bar No. 055099
                                        Gregory B. Mauldin
                                        Georgia Bar. No. 478252
                                        greg.mauldin@alston.com
                                        ALSTON & BIRD LLP
                                        One Atlantic Center
                                        1201 West Peachtree Street
                                        Atlanta, GA 30309-3424
                                        Tel: 404-881-7196
                                        Fax: 404-253-8473

                                        James P. Denvir, III
                                        jdenvir@bsfllp.com
                                        Scott E. Gant
                                        sgant@bsfllp.com
                                        Michael S. Mitchell
                                        mmitchell@bsfllp.com
                                        BOIES, SCHILLER & FLEXNER LLP
                                        5301 Wisconsin Avenue, NW
                                        Suite 800
                                        Washington, DC 20015
                                        Tel: 202-237-2727
                                        Fax: 202-237-6131

                                        *Counsel for Defendant Delta Air Lines, Inc.*

---

[25] Pursuant to Local Rule 7.1D, counsel for Delta certifies that this Memorandum was prepared with a font and point selection approved in Local Rule 5.1.

## CERTIFICATE OF SERVICE

I hereby certify that on March 8, 2010, I electronically filed the foregoing DEFENDANT DELTA AIR LINES, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to counsel of record, and also served the foregoing via electronic mail to the following:

*Interim Liaison Counsel for Plaintiffs:*
David H. Flint
Elizabeth L. Fite
SCHREEDER, WHEELER & FLINT
1100 Peachtree Street, Suite 800
Atlanta, GA 30309
dflint@swfllp.com
efite@swfllp.com

*Interim Co-Lead Counsel for Plaintiffs:*
Daniel A. Kotchen
Daniel L. Low
KOTCHEN & LOW LLP
2300 M Street NW, Suite 800
Washington, D.C. 20037
dkotchen@kotchen.com
dlow@kotchen.com

*Counsel for Defendant AirTran Airways, Inc.:*
Roger W. Fones
MORRISON & FOERSTER LLP
2000 Pennsylvania Avenue, NW
Suite 6000
Washington, DC 20006

rfones@mofo.com

Bert W. Rein
WILEY REIN LLP
1776 K Street. NW
Washington, DC 20006
brein@wileyrein.com

s/ Gregory B. Mauldin
Gregory B. Mauldin
Georgia Bar No. 478252
Email: gmauldin@alston.com